REDLICK-NEWMAN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3537, 10386. Promulgated October 10, 1927.

During the years on appeal, petitioner was regularly engaged in selling personal property on the installment plan. Its accounting records contain sufficient information upon which to predicate a computation of net income under the installment sales method. *Held,* that petitioner is entitled to have its income from installment sales determined under the installment sales method. *L. S. Weeks Co.* v. *Commissioner,* 6 B. T. A. 300.

*F. Mandelbaum, Esq.,* for the petitioner.
*George E. Adams, Esq.,* and *George G. Witter, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes for 1918, 1919, 1920, and 1921, in the amounts of $46,052.53, $19,700.93, $8,487.76, and $5,480.52, respectively. On motion of petitioner, agreed to by respondent, the two appeals were consolidated for hearing. At the hearing, the parties stipulated that the correct deficiencies for 1918 and 1919, if petitioner was not entitled to return its income from installment sales for those years in accordance with section 212 (d) of the Revenue Act of 1926, are $24,259.93 and $16,458.90, respectively, thus removing from controversy all of the issues set out in the petitions other than that as to whether petitioner is entitled to return its income from installment sales, for the four years under consideration, in accordance with the installment sales method as laid down in section 212 (d) of the Revenue Act of 1926.

FINDINGS OF FACT.

Petitioner is a California corporation with its principal office at San Francisco, where it is, and was during the years in controversy, engaged in selling, at retail, furniture and household furnishings, for cash and on the installment plan. The accounting records show sales for the years 1918 to 1921, inclusive, as follows:

| | 1918 | 1919 | 1920 | 1921 | Total |
|---|---|---|---|---|---|
| Sales for cash | $31,874.66 | $67,320.28 | $87,575.17 | $97,937.41 | $284,707.52 |
| Installment sales | 293,694.32 | 392,542.89 | 523,618.59 | 514,635.90 | 1,724,491.70 |
| Total sales | 325,568.98 | 459,863.17 | 611,193.76 | 612,573.31 | 2,009,199.22 |
| Percentage of cash sales to total sales | 9.79 | 14.64 | 14.33 | 14.35 | 14.17 |

It is the custom to allow to purchasers of merchandise for cash a discount of 10 per cent off selling price.

In the case of sales on the installment plan, the purchasers executed a conditional sales contract which provided, among other things, that title to the property described therein remained in the vendor until full payment therefor was made. The initial payments were usually less than 25 per cent of the purchase price; and the deferred payments were extended, usually over a period of 12 months or longer. An individual record card was kept for each purchaser, showing the selling price of the merchandise, the dates and amounts of initial and subsequent payments, and, in case of default in payment and of repossession, the estimated resale value of the repossessed merchandise. These individual record cards have been preserved.

The cost of goods sold for cash was not kept separate, on the books, from the cost of goods sold on the installment plan, and the accounting records do not contain sufficient information upon which to base a segregation of the costs of the two classes of sales. The inventories at the beginning and end of each of the years in controversy, the cost of merchandise purchases made in each year, and the cost of all goods sold in each year are as follows:

| Year | Opening inventory | Cost of purchases | Closing inventory | Cost of goods sold |
|---|---|---|---|---|
| 1918 | $92, 554. 49 | $175, 659. 08 | $108, 800. 60 | $159, 412. 97 |
| 1919 | 108, 800. 60 | 249, 804. 94 | 136, 829. 18 | 221, 776. 36 |
| 1920 | 136, 829. 18 | 363, 095. 35 | 171, 495. 46 | 328, 429. 07 |
| 1921 | 171, 495. 46 | 327, 705. 65 | 154, 335. 19 | 344, 865. 92 |

At the close of each of the years in controversy, a summary was made, from purchasers' individual record cards, of the installment payments received during the year, classified in accordance with the year of the sales to which they related. These summary statements have been preserved as part of the accounting records, and they show installment payments to have been received as follows:

*Installment payments received.*

| Year or sale | 1918 | 1919 | 1920 | 1921 |
|---|---|---|---|---|
| 1917 and prior years | $104, 404. 74 | $24, 319. 14 | $6, 484. 31 | $1, 422. 51 |
| 1918 | 177, 281. 53 | 100, 640. 30 | 12, 447. 34 | 1, 859. 99 |
| 1919 | | 219, 582. 36 | 141, 081. 41 | 18, 958. 18 |
| 1920 | | | 297, 863. 23 | 175, 676. 87 |
| 1921 | | | | 280, 477. 91 |
| Total | 281, 686. 27 | 344, 541. 80 | 457, 876. 29 | 478, 395. 46 |

Prior to and during the years under consideration, the accrual method of accounting was employed by the petitioner in keeping its books of account. All installment sales were considered as closed and completed transactions of the years in which they took place.

For all years prior to 1918, petitioner's income-tax returns were rendered in accordance with the books of account. For the years under consideration, petitioner filed returns purporting to show its income from installment sales in accordance with the installment sales method of returning income. The gross sales shown on the books of account and the gross income from sales reported in the returns are as follows:

| Year | Gross sales on books | Gross income from sales returned | Difference |
|------|---------------------|----------------------------------|------------|
| 1918 | $325,568.98 | $205,639.42 | $119,929.56 |
| 1919 | 459,863.17 | 387,189.42 | 72,673.75 |
| 1920 | 611,193.76 | 539,924.83 | 71,268.93 |
| 1921 | 612,573.31 | 562,906.38 | 49,666.93 |

In computing the income returned for each of the years in question, petitioner excluded all payments received during those years which applied to sales made prior to 1918, on the ground that the profit from such sales had been returned for taxation prior to the change to the installment basis of returning income. Also, petitioner included in invested capital, as earned surplus, the unrealized profits from installment sales made prior to 1918 which had been returned as income prior to the change of basis of returning income. Respondent held that petitioner is not entitled to compute its income according to the installment sales method, because such method was not employed in keeping the books of account. The deficiencies asserted are based upon income computed on the straight accrual basis, all installment sales being considered as closed and completed transactions of the years in which they were made.

### OPINION.

Morris: Since, during the years in controversy, petitioner regularly sold personal property on the installment plan, and has elected to return the income from sales made on that plan in accordance with the method prescribed by section 212 (d) of the Revenue Act of 1926, it can not be deprived of the right to so return the income from installment sales solely on the ground that its books of account were not maintained on the installment sales basis. Meeting all other requirements of the statute, the petitioner is entitled to return its income from installment sales in accordance with the installment sales method, if the books of account contain sufficient information and were kept so that income can be accurately computed by that method. *L. S. Weeks Co.* v. *Commissioner*, 6 B. T. A. 300; *Warren Reilly* v. *Commissioner*, 7 B. T. A. 1327.

The petitioner's books of account contain sufficient information upon which to predicate a computation of income on the installment sales basis; and its income and invested capital, for the years in controversy, should be redetermined upon that basis in accordance with the principles and procedure laid down in the decision of this Board in the *Appeal of Blum's, Incorporated*, 7 B. T. A. 737.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by TRAMMELL and LITTLETON.